IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| Amos Wright,<br><br>        Plaintiff,<br><br>    v.<br><br>Northrop Grumman Ship Systems, Inc.,<br><br>        Defendant. | No. 1:06-cv-00844-LG-RHW<br><br>**COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF AND DAMAGES**<br><br>(Civil Rights-Employment)<br><br>Jury Trial Demanded |

**PRELIMINARY STATEMENT**

1.  This action seeks injunctive and declaratory relief to prevent continuing, systemic, and unjustified race discrimination by the employer, NORTHROP GRUMMAN SHIP SYSTEMS, INC. ("NGSS"), with regard to the retention, terms and conditions of employment, treatment, and promotion and transfer of Black employees at NGSS, including severe, pervasive, and ongoing harassment of Black employees through longstanding maintenance of a racially hostile work environment. In addition to injunctive and declaratory relief, and all other available equitable relief, plaintiff seeks compensatory and punitive damages.

**JURISDICTION**

2.  This suit is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. §§ 2000e *et seq*. ("Title VII"); and Civil Rights Act of 1866, 42 U.S.C. § 1981 ("1981"). Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f), 28 U.S.C. §§ l343 (3)&(4); 28 U.S.C. § 1331 and 28 U.S.C. § 1337. Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 & 2202.

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

1

## PARTIES

3. Amos Wright is a Black employee of NGSS who has been employed by NGSS for over 32 years.

4. NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a business that is engaged in the construction and refurbishing of seagoing vessels, both military and civilian. It is located in Pascagoula, Mississippi. It is an employer for purposes of Title VII. On the basis of information and belief, plaintiff alleges that NORTHROP GRUMMAN SHIP SYSTEMS, INC. is a successor in interest to INGALLS SHIPBUILDING COMPANY.

5. NGSS has received numerous contracts and substantial income from agencies and departments of the Federal Government, and because of the receipt of said contracts and income it is subject to Title VI of the Civil Rights Act of 1964, as amended. NORTHROP GRUMMAN SHIP SYSTEMS, INC., and its predecessor, INGALLS SHIPBUILDING COMPANY, therefore are, and have been, a federal contractor at all times relevant.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

6. All conditions precedent to jurisdiction pursuant to section 706 of Title VII of the Civil Rights Act of 1964, as amended, have been complied with to wit: an appropriate charge of employment discrimination has been filed with the Equal Employment Opportunity Commission, and a notice of right to sue was issued by the Equal Employment Opportunity Commission.

7. Plaintiff has filed a timely complaint based on the time limits contained in section 706 of Title VII of the Civil Rights Act of 1964, as amended.

8. On or about December 20, 2000, the Equal Employment Opportunity Commission issued a determination finding reasonable cause to believe that a racially hostile work environment existed at NGSS.

9. Attempts at conciliation regarding the finding of a racially hostile work environment, which was and is statutorily required, failed.

Plaintiff Amos Wright's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00844-LG-RHW

2

**PROCEDURAL BACKGROUND PRECEDING THIS COMPLAINT**

10. An initial complaint was filed in the United States District Court for the Southern District of Mississippi on March 21, 2001, in which eleven (11) persons, named as representative plaintiffs, and the organization, Ingalls Workers for Justice, alleged class-wide discrimination at NGSS on the basis of race.  The case was assigned a case number of 1:01-CV-111(G)(R).

11. A First Amended Complaint was filed on April 26, 2001 in the initial case, additionally alleging maintenance of a racially hostile work environment at NGSS.

12. A Complaint in Intervention was filed on February 13, 2003 in the initial case, necessitated by the Court's dismissal of the following causes of action and parties from the First Amended Complaint on February 28, 2002:

   a) Dismissal of the class action allegations seeking compensatory and punitive damages;

   b) Dismissal of the claim for relief alleged pursuant to Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, *et seq.*;

   c) Dismissal of the claim for relief alleged pursuant to the Thirteenth Amendment to the U.S. Constitution;

   d) Dismissal of organizational plaintiff INGALLS WORKERS FOR JUSTICE;

   e) Dismissal of defendant LITTON INDUSTRIES; and

   f) Dismissal of defendant NORTHROP GRUMMAN.

13. A Second Amended Complaint was filed on April 7, 2003 in the initial case.

14. On or about March 16, 2004, the initial case was reassigned to the Honorable Louis Guirola, Jr., District Court Judge; on December 30, 2004, the Honorable Robert H. Walker, Magistrate Judge, was assigned to be the Magistrate Judge for the initial case.

15. On August 17, 2006, Magistrate Judge Walker entered an order entitled, "Order Requiring Separate Complaints," which, *inter alia*, severed the plaintiffs' claims from one another, and required the filing of new complaints and assignment of new case numbers for each of the individual plaintiffs in Case No. 1:01-CV-111(LG)(RHW).

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

3

16. At some point during the period of time from August 17, 2006 through September 7, 2006, plaintiff Amos Wright's severed action was assigned the case number of 1:06-cv-00844-LG-RHW.

## FACTUAL STATEMENT
## RACIAL DISCRIMINATION GENERAL ALLEGATIONS

17. The defendant, NGSS, has intentionally pursued and continues to pursue employment policies and practices that constitute systemic discrimination against plaintiff and other Black employees and that deprive or tend to deprive such persons of equal employment opportunities within NGSS.  NGSS has intentionally implemented these policies and practices, among other ways, as follows:

   a) By failing to treat Blacks on an equal basis with Whites.

   b) By using selection devices for promotions that have an adverse impact on Blacks, are not job related and have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures, and have more adverse impact than equally valid alternatives.

   c) By using evaluation procedures in the consideration of employees for promotions that discriminate against or illegally exclude Black employees from consideration.

   d) By failing to provide Black employees with equal opportunities for advancement within the company because of their race.  Black employees are denied promotions despite their qualifications and years on the job.  It is not uncommon for a Black employee to be denied a promotion at NGSS in an area she or he has worked in for twenty years and then be assigned to train a White employee with less seniority.

   e) By maintaining a double standard in the granting of promotions to White employees vis à vis Black employees.  Practices including cronyism, nepotism, word-of-mouth recruitment, failure to post or advertise employment opportunities, and/or the placement of White employees in acting position have

Plaintiff Amos Wright's Complaint for                                                                                              4
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

       inured to the determent of Black employees historically.

    f) By restricting access to employment opportunities for Black employees and maintaining a workforce in which its supervisory and management personnel has been and continues to be predominately White.

    g) By engaging in a policy in which positions are actually filled even before they may be posted or advertised as an available position.

    h) By demoting Black employees at a disproportionate rate as compared to White employees.

    i) By retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment at NGSS.

    j) By denying Black employees opportunities to go on trips or sea trials where they would be able to earn substantial amounts of overtime.

    k) By maintaining a practice of "job steering," resulting in Black employees being assigned to, and then denied the opportunity to move out of, dangerous, dirty, and generally less desirable work areas because of their race.

    l) By instituting and allowing the continuance of a racially hostile work environment for Black employees.

    18. This pattern or practice denies the full exercise of rights secured by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*, and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

    19. NGSS has been aware that its actions with regard to the treatment of Black employees were and are in violation of federal statutes prohibiting discrimination on the basis of race.

## SPECIFIC CLAIMS FOR RELIEF
## TITLE VII AND § 1981

    20. Plaintiff incorporates paragraphs 1 through 19, as though fully set forth herein.

Plaintiff Amos Wright's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00844-LG-RHW

5

21. Plaintiff has never been promoted to any position above leaderman in spite of plaintiff's 32 years at NGSS. Plaintiff has applied for a promotive position to Supervisor and was been informed by written communication from NGSS dated March 7, 2000 that he was qualified for the Supervisor position for which he applied, however, plaintiff was not selected because of his race, and because of management's disapproval of his marriage to a White woman. The means used to determine plaintiff to be unqualified have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

22. Plaintiff has worked for over 32 years in the chipping department at NGSS, a department which utilizes a position entitled "leaderman" or "half-hat." Based upon information and belief, plaintiff hereby alleges that no formal means of applying for the position of "leaderman" or "half-hat" at NGSS exist. Plaintiff has made it known that he has been interested in being selected for the position of "leaderman" or "half-hat," however, plaintiff has not been selected for the position in the last 24 years, in spite of his previous experience holding that position a number of times in the 1980's.. Plaintiff has not been informed in any way that he was not qualified for the position of "leaderman" or "half-hat."  Plaintiff has not been selected since 1982 for the position of leaderman because of his race, and because of management's disapproval of his marriage to a White woman. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

23. Plaintiff has never been promoted to any position above leaderman in spite of plaintiff's 32 years at NGSS, and has not been promoted to the position of leaderman since 1982. Plaintiff has observed both that Black employees are not promoted in spite of their qualifications and seniority as well as the lack of qualifications of White employees who have been promoted, and, therefore, Plaintiff has not applied for promotive positions for which he was qualified, and plaintiff has never been selected for promotion to any such position. Plaintiff has also observed that the availability of positions was not always publicized. The means used to determine that plaintiff would not be selected for a position, for which he was and is qualified, have never been

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

6

validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

24. Plaintiff has made his supervisor(s) aware numerous times that he desired to be chosen to participate in sea trials.  However, he was only selected to participate in one sea trial, 7-8 years ago, in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so.  His one opportunity to participate followed a complaint to the union.  Furthermore, the selection process for participating in sea trials has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

25.  Plaintiff has made his supervisor(s) aware that he desired to receive certain training, including tank tester training, which he has requested from 1974 until the present.  However, he has never been selected for the requested training, in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so.  Furthermore, the selection process for obtaining training has never been validated pursuant to the Uniform Guidelines on Employee Selection Procedures.

26. Plaintiff has been subjected to racial job tracking that assigns Black employees at NGSS at a disproportionate rate as compared to White employees to the most undesirable, dirtiest, and dangerous employment environments in the workplace.  This includes the following instances:

    a) Plaintiff has been assigned to the Hull Department since 1974, which is known to be one of the dirtiest, most dangerous, and hazardous to workers' health of all the departments at NGSS.  Within this department, Plaintiff was regularly assigned to work in the inner bottom of a ship, to chip and grind.  This is considered the hardest and dirtiest assignments in this department. Although everyone in the Chipping Department has to work the inner bottom, some positions in the chipper department have a relatively easier job to perform in the inner bottom. For tank testers, working the inner bottom is not as difficult as for chippers. The tank tester position is seen as a privileged one and is reserved for White workers. Plaintiff

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

7

has observed that the chipper position is predominantly Black whereas the tank tester position is predominantly White.  For this reason, Plaintiff believes he was precluded from being a tank tester because of his race. Plaintiff repeatedly expressed his interest in transferring to the position of tank tester. Plaintiff has observed that Black employees receive these types of assignments and are not allowed to reject them while similarly situated White employees are allowed to reject these assignments.

27. Plaintiff has been subjected to disparate treatment with regard to the imposition of discipline for actual or alleged transgressions for which plaintiff has observed that similarly situated White employees are not disciplined.  This conduct includes an instance on June 5, 2002, when plaintiff's supervisor issued as disciplinary warning to him for "rolling up" ten minutes early, when similarly situated White employees were not issued warning for the same conduct.

28. Plaintiff has been retaliated against or suffered adverse consequences for opposing NGSS's discriminatory employment practices, in violation of Title VII and § 1981.  This includes the following instances:

   a) In 2003, plaintiff complained to his supervisor, because young White inexperienced workers, some trained by plaintiff, were being promoted over more experienced Black workers, including plaintiff.  For the next three months, the supervisor assigned plaintiff to work outside the steel fab shop in the hot sun in the summer months – an assignment he would not have otherwise been given because of his seniority.

   b)  In the 1980's, plaintiff complained to the union steward about racially derogatory graffiti.  As a result, plaintiff was frequently lent out to other shops, on a daily basis, which required him to walk a long distances carrying his heavy tools, weighing in excess of 50 pounds.  Absent discrimination and retaliation, such a job assignment would have been assigned on a rotating basis according to

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

8

seniority.

29. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to offensive racially derogatory writings, depictions, and/or graffiti, including pervasive use of the word "Nigger," on a constant basis in a number of places at NGSS from the time he began to work at NGSS until the present. Such writings have included references to the word "Nigger," nooses, and the KKK. Plaintiff has observed racially derogatory graffiti as recently as four months ago, in the restroom of the LDH8. NGSS knows or should have known of the presence of offensive racially derogatory writings, depiction, and/or graffiti in its workplace, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having been exposed to the offensive racially derogatory writings, depictions, or graffiti because plaintiff believed it would be useless so to do, given the historical lack of sufficient response on the part of NGSS. When he did complain about the graffiti through his union steward in the 1980's, some removal of the graffiti took place temporarily, but plaintiff believed that as a result of his complaint he was labeled a troublemaker, and was harassed by supervisors who overly scrutinized his work performance, and was subjected to retaliation, including the retaliatory conduct set forth in paragraph 28 and incorporated herein by reference.

30. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to White supervisory personnel and White non-supervisory employees using the term "nigger" or other racial epithets, including in jokes, on a constant basis in a number of places at NGSS, from the time he began to work there until recently. NGSS knows or should have known about use of the term "nigger" and other racial epithets by White supervisory personnel and White non-supervisory employees, but has failed to take steps to prevent or correct promptly its occurrence. Plaintiff has not complained about each and every instance of having heard this or other racial epithets because plaintiff believed it would be useless so to do given the historical lack of sufficient response on the part of NGSS, and because of his experience with retaliation resulting from prior complaints. This includes the following

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

9

instances:

    a) Plaintiffs' supervisors have used the term "Nigger" to refer to Black workers in Plaintiff's presence on a regular basis.  Approximately five years ago, a supervisor in the chipping department referred to a Black superintendent as the director's "Nigger."

    b) In the 1980's upon hearing that plaintiff was married to a White woman, a supervisor told plaintiff's White brother-in-law, "If you got a Nigger for a brother-in-law, you can't be worth shit."

    c) Another supervisor who regularly used the term "nigger" told plaintiff in response to plaintiff's casual inquiry about the supervisor's weekend, told plaintiff he had been "Nigger-fishing,"

31. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been exposed to nooses in a number of places at NGSS.  NGSS knows or should have known about the presence of nooses, both actual and depicted in drawings, at its workplace, but has failed to take steps to prevent or correct promptly its occurrence.  Plaintiff has complained about seeing these nooses, but the response has always been insufficient to remedy the situation.  Plaintiff has not complained about each and every instance of having seen nooses at NGSS because plaintiff believed it would be useless to do so, given the historical lack of sufficient response on the part of NGSS.   This includes the following instances:

    a) Plaintiff has seen 8-10 nooses at the shipyard, most recently three years ago.  On that most recent occasion, the noose was hung over a burning machine being operated by a Black co-worker, who found the noose when he arrived in the morning.  Plaintiff did not complain at that time because, based on NGSS's historical response, plaintiff believed that the response would be insufficient to remedy the situation and because plaintiff believed he would be subjected to retaliation for complaining.  However, NGSS was or should have been aware of the presence of the noose.

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

10

32. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. The hostile work environment comprises and/or has culminated in the adverse treatment described in paragraphs 20 through 28, incorporated as though fully set forth herein.

33. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact of presence of offensive racially derogatory writings, depictions, and/or graffiti; ubiquitous use of the word "nigger" and other racist epithets; and nooses at NGSS.

34. Plaintiff has been subjected to a hostile work environment based on plaintiff's race. Plaintiff has been and is aware of the fact that Black employees have not been provided equal opportunity with regard to upward job mobility.

35. The hostile work environment based on race to which plaintiff has been exposed is of a continuing and ongoing nature and constitutes a continuing violation of Title VII and § 1981.

36. NGSS has failed to take steps to remedy and correct promptly the harassing behavior occurring in its workplace.  NGSS has failed to promulgate, disseminate, and enforce adequately an anti-harassment policy and failed to provide sufficient training to its employees regarding same.  NGSS has failed to respond sufficiently to complaints regarding the harassment as set forth in paragraphs 29 through 35, incorporated as though fully set forth herein.

## APPROPRIATENESS OF EQUITABLE RELIEF

37. Plaintiff will suffer irreparable injury if the declaratory and injunctive relief requested herein is not granted, because NGSS will make employment decisions on the basis of the discriminatory procedures and practices described herein or will not remediate the racially hostile work environment that exists in its workplace. If NGSS is not enjoined from engaging in discriminatory employment practices, plaintiff will be deprived of career opportunities, which plaintiff otherwise would have been able to pursue, but for NGSS's discriminatory employment practices.

38. No plain, adequate, or complete remedy at law is available to plaintiff.  The loss of promotional opportunities, experience, and careers with NGSS cannot be adequately

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

11

compensated by monetary relief. Similarly, the continued subjection to a racially hostile work environment cannot be adequately compensated by monetary relief.

39. Unless restrained by order of this Court, NGSS will continue to pursue policies and practices, which are the same as, or similar to those alleged above.

## FIRST CLAIM FOR RELIEF

40. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a first claim for relief as follows:

41. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq*.

## SECOND CLAIM FOR RELIEF

42. Plaintiff refers to and incorporates by reference the allegations contained in paragraphs 1 through 39 and further alleges for a second claim for relief as follows:

43. Defendant has intentionally failed to provide plaintiff equal employment opportunities by discriminating against plaintiff on the basis of race with regard to treatment and promotions at NGSS. NGSS's unequal treatment of plaintiff and other Black employees and its intentional failure to remedy such unequal treatment violates plaintiff's right to be free from such discrimination under the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981.

## THE APPROPRIATENESS OF COMPENSATORY AND PUNITIVE DAMAGES

44. Defendant NGSS has caused plaintiff emotional distress and mental anguish as a proximate result of its illegal practices, and plaintiff is entitled to compensatory damages pursuant to the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

45. Similarly, defendant NGSS was aware that its actions with regard to plaintiff were in

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

12

violation of federal statutes prohibiting discrimination on the basis of race, and therefore, plaintiff is entitled to punitive damages.

## PRAYER

WHEREFORE, plaintiff prays that this Court:

    a) Declare pursuant to 28 U.S.C. §§ 2201 & 2202 the employment practices set forth in paragraphs 17 through 39 to be unlawful and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.* and the Civil Rights Acts of 1866, as amended, 42 U.S.C. § 1981;

    b) Adjudge, decree, and declare that the practices of NGSS complained of herein are violative of the rights secured to plaintiff by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

    c) Issue a preliminary and permanent injunction enjoining NGSS, its agents, successors, employees, attorneys, and those acting in concert with it from engaging in each of the unlawful practices set forth in paragraphs 17 through 39 and from continuing other practices found to be in violation of applicable law;

    d) Direct NGSS to take such affirmative steps as are necessary to ensure that the effects of its unlawful employment practices are eliminated;

    e) Enter a permanent mandatory injunction requiring that NGSS adopt employment practices in conformity with the requirements of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981;

    f) Require that NGSS submit a comprehensive plan detailing how it plans to ensure fair and equitable job advancement opportunities for Black employees. The plan should also outline steps to be taken to ensure that jobs available remain open until the posting period has expired;

    g) Require that NGSS institute a policy that affords equal opportunities for training

Plaintiff Amos Wright's Complaint for  
Injunctive and Declaratory Relief and Damages  
No. 1:06-cv-00844-LG-RHW

13

and development. The policy should include the requirement that such training opportunities must be announced to the entire workforce as well as a procedure consisting of a rotation scheme and other procedures to ensure that training for job advancement is afforded to all those who are interested;

h) Grant equitable relief, including, but not limited to, back pay, sick pay, vacation pay, disability benefits, and seniority rights to plaintiff;

i) Grant such punitive, general, and special damages as proved at trial;

j) Award plaintiff the costs and litigation expenses of this action and reasonable attorneys' fees as provided for in section 706(k) of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-5(k), and the Civil Rights Attorneys Fees Award Act of 1976, as amended, 42 U.S.C. § 1988; and

k) Grant such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff hereby demands a trial by jury.

Dated: September 20, 2006

SANDRA JARIBU HILL, Esq.
Mississippi Workers Center for Human Rights

WILLIAM C. MCNEILL, III, Esq.
The Legal Aid Society-Employment Law Center

Counsel for Plaintiffs


By:   /s/ William C. McNeill, III
WILLIAM C. McNEILL, III, Esq.


William C. McNeill, III, Esq., MS Bar No. 42867, *Pro Hac Vice*
Denise M. Hulett, Esq., MS Bar No. 44672, *Pro Hac Vice*

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

14

Shelley A. Gregory, Esq., MS Bar No. 43443, *Pro Hac Vice*
The Legal Aid Society – Employment Law Center
600 Harrison Street, Suite 120
San Francisco, California  94107
(415) 864-8848

Sandra Jaribu Hill, Esq., MS Bar No. 10684
Mississippi Workers Center for Human Rights
213 Main Street
P.O. Box 1223
Greenville, Mississippi  38702-1223
(662) 334-1122

Plaintiff Amos Wright's Complaint for                                                                              15
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2006, I electronically filed the foregoing with the Clerk of the Court using the ECF System which sent notification of such filing to the following: Paul B. Eason; Maria Candace Burnette; Timothy W. Lindsay; Stephen A. Brandon.

I hereby certify that I have mailed by United States Postal Service the documents to the following non-ECF participants:

Tammi Liddell
3836 Prentiss St.
Moss Point, MS  39563

Willie B. Richmond
1608 Timberlane Road
Gautier, MS  39553

Edna M. Tubbs
P.O. Box 501
Escatawpa, MS  39552


   /s/ Laurel Kapros
Laurel Kapros

Plaintiff Amos Wright's Complaint for
Injunctive and Declaratory Relief and Damages
No. 1:06-cv-00844-LG-RHW

16